# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH JERSEY SPINE GROUP, LLC; and GARRICK COX, M.D. LLC, | Civil Case No. 2:17-13173 |
| Plaintiffs, | |
| vs. | Before: Jose L. Linares , U.S.D.J. |
| | Cathy L. Waldor, U.S.M.J. |
| BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC.; HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, INC.; and JOHNSON O'HARE COMPANY, INC., | Return Date:  April 16, 2018 |
| Defendants. | Oral Argument Requested |

_____

## PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF REMAND FOR LACK OF SUBJECT-MATTER JURISDICTION
_____

Eric D. Katz  |  NJ Atty. No. 016791991
David M. Estes  |  NJ Atty. No.  034532011
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: 973-228-9898
F: 973-228-0303
E: ekatz@mskf.net
*Counsel for Plaintiff*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ...............................................................................................1

REPLY ARGUMENT ..........................................................................................4

A.   Defendants are Limited to the "Jurisdictional Facts"
     in their Petition...........................................................................................4

B.   Defendants Cannot Establish the First Prong of *Pascack* ........................9

C.   Defendants Also Cannot Establish the Second Prong of *Pascack* .......................................13

D.   Defendants' "Precedent" Argument is Unavailing ..............................17

CONCLUSION..................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Access Mediquip v. UnitedHealthcare Ins.*,
  662 F.3d 376 (5th Cir. 2011) ................................................................................15,16

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2014)................................................................2

*Brown v. Jevic*, 575 F.3d 322 (3d Cir. 2009) ................................................................13

*CardioNet v. Cigna Health Corp.*, 751 F.3d 165 (3d Cir. 2014)................................................8,10

*City of Hope Nat. Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223 (1sr Cir. 1998) ............................12

*Cohen v. Horizon Blue Cross Blue Shield of N.J.*,
  2017 WL 685101 (D.N.J. Feb. 21, 2017) ................................................................11

*Conn. St. Dental Ass'n v. Anthem Health Plans*,
  591 F.3d 1337 (11th Cir. 2009) ................................................................18

*Cmty. Med. Ctr. v. Loc. 464A UFCW Wel. Rebt. Plan*,
  143 F. App'x 433 (3d Cir. 2005) ................................................................8,12

*Elite Ortho. and Sports Med., PA v. Cigna Healthcare*,
  2017 WL 1905266 (D.N.J. Apr. 20, 2017) *R&R adopted*,
  2017 WL 1902162 (D.N.J. May 8, 2017) ................................................................17,18

*Encompass Office Sol., Inc. v. Conn. Gen. Life Ins.* Co.,
  2012 WL 3030376 (N.D. Tex. Jul. 25, 2012)................................................................9

*Fellhauer v. City of Geneva*, 673 F. Supp. 1445 (N.D. Ill. 1987)................................................................1

*Garrick Cox M.D. v. Cigna Healthcare*, 2016 WL 6877778 (D.N.J. Oct.
  28, 2016), *R&R adopted,* 2016 WL 6877740 (D.N.J. Nov. 21, 2016) ........................................18

*Healy v. Ratta*, 292 U.S. 263(1934)................................................................1

*Horizon Blue Cross Blue Sh. of N.J. v. E. Brunswick Surg. Ctr.*,
  623 F. Supp. 2d 568, 574 (D.N.J. 2009) ................................................................17

*Kennedy v. Conn. Gen. Life Ins.,* 924 F.2d 698 (7th Cir. 1991) ................................................................12

*Lister v. Stark*, 890 F.2d 941 (7th Cir. 1989)................................................................12

*Manning v. Merrill Lynch*, 772 F.3d 158 (3d Cir. 2014)................................................................13

*McCulloch Orthopaedic Surg. Servs., PLLC v. Aetna Inc.*,
  857 F.3d 141 (2d Cir. 2017)............................................................................13,16,18

*Metcalf v. Blue Cross Blue Shield of Mi.*, 2013 WL 4012726
  (D. Or. Aug. 5, 2013)……………………………………………………………………9

*Nationwide DME v. Cigna Health & Life Ins.*,
  136 F. Supp. 3d 1079 (D. Ariz. 2015) ..................................................................16

*Neuro. Surg. Assocs. v. Aetna Life Ins.*,
  2014 WL 2510555 (D.N.J. June 4, 2014) ..............................................................10

*N. Jersey Brain & Spine Ctr. v. Aetna*, 801 F.3d 369 (3d Cir. 2015) ...................1,2,9,13

*N. Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co.*,
  2017 WL 659012 (D.N.J. Feb. 17, 2017), *R&R adopted*,
  2017 WL 1055957 (D.N.J. Mar. 20, 2017)........................................................4,8,10

*N. Jersey Brain & Spine v. Conn. Gen. Life. Ins. Co.*, 2011 WL 4737067,
  *R&R adopted*, 2011 WL 4737063 (D.N.J. 2011) .....................................................18

*N. Jersey Ctr. for Surg. v. Horizon Blue Cross Blue
  Sh. of N.J.*, 2008 WL 4371754 (D.N.J. Sept. 18, 2008)........................................10,17

*N. Jersey Spinal Med. and Surg., P.A. v. Aetna Ins. Co.*,
  2009 WL 3379911 (D.N.J. Oct. 19, 2009)..............................................................7,8

*N.J. Spinal & Med. Surg. P.A. v. IBEW Local 164*,
  2012 WL 1988708 (D.N.J. May 31, 2012) ...............................................................8

*Pascack Valley Hosp. v. Loc. 464A UFCW Welfare Reimbursement Plan*,
  388 F.3d 393(3d Cir. 2004)*, cert. denied*, 546 U.S. 813 (2005)........................... passim

*Peterson v. Cigna Ins. Co.*, 2014 WL 4054120 (D.N.J. Aug. 15, 2014) ......................18

*Progressive Spine & Ortho. v. Anthem Blue Cross Blue Sh.*,
  2017 WL 4011203 (D.N.J. Sept. 11, 2017) ...........................................2,10,11,12,13

*SLF No. 1 v. United Healthcare Servs.*, 2014 WL 518222
  (M.D. Tenn. Feb. 7, 2014) ...................................................................................16

*Somerset Ortho. Assocs. v. Aetna Life Ins.*,
  2007 WL 432986 (D.N.J. Feb. 2, 2007) .................................................................10

*Specialty Surg. of Middletown v. Aetna*, 2014 WL 2861311
  (D.N.J. June 24, 2014) ...................................................................................2,10

*State Farm Indem. v. Fornaro*, 227 F. Supp. 2d 229, 240-41 (D.N.J. 2002)..............................4,5

*Steel Valley Auth. v. Union Switch & Signal Div.*,
  809 F.2d 1006 (3d Cir. 1987)........................................................................4

*Trans'l Hosp. v. Blue Cross & Blue Sh. of Tex.*,
  164 F.3d 952 (5th Cir. 1999) .......................................................................16

*University Spine Center v. Aetna, Inc.*, 2017 WL 6514663
  (D.N.J. Dec. 20, 2017) ...............................................................................2,3

*USX Corp. v. Adriatic Ins. Co.,* 345 F.3d 190, 205 (3d Cir. 2003),
  *cert. denied,* 541 U.S. 903 (2004)..................................................................4

*Verde-Rodriguez v. Atty. Gen. U.S.*, 734 F.3d 198 (3d Cir. 2013) ................................ 12

*Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.*,
  2007 WL 2416428 (D.N.J. Aug. 20, 2007) ......................................................17

## **Statutes**

ERISA § 502 ................................................................................................18

ERISA § 514(a)..............................................................................................18

## **Other Sources**

Wright, *Fed. Practice & Procd.*, 14C Fed. Prac. & Proc. Juris. § 3733 (4th ed.) ...........................5

## **INTRODUCTION**

Plaintiffs submit this reply brief in further support of remand, and in response to defendants' brief in opposition to remand, (D.E. 11). To recap, plaintiffs are New Jersey spine surgeons that performed pre-authorized spine surgery on their patient J.B. who, at all relevant times, was insured under a health benefit plan sponsored, funded and/or administered by defendants.

Removal jurisdiction has nothing to do with "context," as defendants muse (Db1,7),[1] and the existence of a different pending action brought by the patient, J.B. is not a basis to exert removal jurisdiction in **this** case, and has no bearing on the remand analysis this Court must undertake on this motion.  Indeed, it is axiomatic that removal jurisdiction is ***strictly construed*** because of its corrosive effect on the federalist system, and its impingement on state sovereignty, *Healy v. Ratta*, 292 U.S. 263, 270 (1934); *Fellhauer v. City of Geneva*, 673 F. Supp. 1445, 1447 (N.D. Ill. 1987). Congress only intended ERISA preemption to capture a ***"narrow class of cases,"*** and to protect patients, not insurers. *Pascack Valley Hosp. v. Loc. 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 398 (3d Cir. 2004), *cert. denied*, 546 U.S. 813 (2005) (emphasis added); *N. Jersey Brain & Spine Ctr. v. Aetna*, 801

---

[1]     Db__" refers to defendants' brief in opposition to remand (D.E. 11).

F.3d 369, 373 (3d Cir. 2015).[2] Here, defendants have failed to carry their "heavy burden" to establish removal jurisdiction, specifically, that plaintiffs "'could have brought [its] claim[s] under ERISA'" **and** "'there is no other independent legal duty that is implicated by [defendants'] actions.'" *Pascack*, 388 F.3d at 400.[3]

Out of the gate, defendants expressly concede that the subject plan contains an anti-assignment provision (Db19-20), an immediate death-knell to the first prong analysis of *Pascack*. But defendants cavalierly maintain the existence and enforceability of the anti-assignment clause does not negate ERISA derivative "standing," notwithstanding their position has been rejected by numerous federal courts, including those in this District, *see, e.g., Progressive Spine & Ortho. v. Anthem Blue Cross Blue Sh.*, 2017 WL 4011203, at *7-9 (D.N.J. Sept. 11, 2017),

---

[2]   For brevity, plaintiffs incorporate Point II of their opening brief in support of remand at 29-34 (D.E. 7-1), addressing that "relatedness jurisdiction" is *not* a basis for removal of this properly filed state law action.  Defendants agree and, after pontificating for several pages, are forced to concede this point: "[Defendants] have never argued that the existence of a federal question in a pending case necessarily gives rise to federal question jurisdiction in a subsequent case with overlapping facts."  (Db6).

[3]   Defendants inexplicably jump through hoops throughout their brief attempting to "distinguish" *Pascack* from *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2014) (Db13), going so far as to scold plaintiffs for referring to the ERISA complete preemption test in the Third Circuit as the "*Pascack* test," even though that is precisely the analysis this Court has applied in the past and must apply now.  *See, e.g., Specialty Surgery of Middletown v. Aetna*, 2014 WL 2861311 (D.N.J. June 24, 2014) (Linares, J.) (applying Pascack test); *University Spine Center v. Aetna, Inc.*, 2017 WL 6514663 (D.N.J. Dec. 20, 2017) (Linares, J.) (same).

and notwithstanding that plaintiffs would be left without any legal recourse whatsoever if this case were not remanded, *see, e.g., Univ. Spine Ctr*, 2017 WL 6514663 (D.N.J. Dec. 20, 2017) (Linares, J.) (in ERISA enforcement action, anti-assignment clause is enforceable and eliminates provider's standing to sue). The Court need go no further and remand is appropriate on this ground alone.

Defendants also flunk the second prong. Under *Pascack*, the second prong focuses on the "crux," or heart, of a dispute. 388 F.3d at 402. Here, the crux is defendant's representation to plaintiffs that it would cover and pay for the surgical services to J.B. when plaintiffs contacted defendant for pre-approval, and then reneging and refusing to cover and pay for those services after they were rendered -- despite the indisputable fact that all other providers that were involved in the surgery were paid for their services. (*See* Pl. Comp, D.E. 1-1, at ¶¶ 11-17).

It is well-settled under federal common law for almost 3 decades, ***including numerous decisions from this District***, that such claims are not subject to ERISA preemption, *i.e.*, the *Memorial Hospital* rule. *See* Pl Mov. Br., at Point I(D) pp. 21-28 (D.E. 7-1). Grasping, defendants try to make this motion about the ***merits*** of this dispute, improperly relying on fake "facts" contained in their notice of removal, *i.e.*, "the codes for which BCBSMA issued an authorization did not match the codes for

3

which the Providers sought payment." (Db26).[4]  But "[t]he Court here is deciding a motion to remand and not a motion to dismiss. The Court need not determine at this point whether Plaintiff sufficiently has . . . state[d] a claim upon which relief can be granted." *N. Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co.*, 2017 WL 659012, at *5 (D.N.J. Feb. 17, 2017), *R&R adopted*, 2017 WL 1055957 (D.N.J. Mar. 20, 2017) (granting remand).  Accordingly, remand should be granted.

## **REPLY ARGUMENT**

### **A.** **Defendants are Limited to the "Jurisdictional Facts" in their Petition**

It is long established that defendants are limited to the jurisdictional bases, and facts, asserted in the removal pleading. *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205 (3d Cir. 2003), *cert. denied*, 541 U.S. 903 (2004) (holding defendant cannot add "new jurisdictional facts" or new "basis of jurisdiction"); *State Farm Indem. v. Fornaro*, 227 F. Supp. 2d 229, 240-41 (D.N.J. 2002) ("new grounds for removal

---

[4]      Such counter-factual arguments should be rejected as a matter of law. A removing-defendant cannot trump, or re-write, the plaintiff's well-pled complaint: "the district court must **focus on the plaintiff's complaint…. [The] court must assume as true all factual allegations of the complaint**." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987). Consequently, defendants' arguments predicated on ignoring, or distorting, the facts in the Complaint, or adding their own "facts" should be disregarded as a matter of law -- aside from being untrue.  Defendants concede this axiomatic principle in their brief. (Db5) ("[Defendants] do not quarrel with the general premise that a court reviews a motion to remand . . . by *crediting as true the factual allegations of the complaint*.") (Emphasis added).

jurisdiction may not be added and missing allegations may not be furnished"); *see also* Wright, *Fed. Practice & Procd.*, 14C Fed. Prac. & Proc. Juris. § 3733 (4th ed.). Yet, in opposing this motion, defendants erroneously contend that the "factual backdrop" for removal jurisdiction "derives from matters" outside of the petition itself. (Db9).

For example, defendants believe the Court should take "notice" of the separate action filed by the patient, J.B., and that because of that action the instant case is a federal claim masquerading as a state law claim. (Db7-8). But defendants ultimately concede, as they must, that so-called "relatedness jurisdiction" is not a basis for jurisdiction in this Court. *See* Db6 ("[Defendants] have never argued that the [J.B.] Action gives rise to 'relatedness jurisdiction.'"); *see also* Pl Mov. Br., at Point II pp. 29-34 (D.E. 7-1).[5]

Defendants also contend that the health insurance claim forms submitted by **one** plaintiff, North Jersey Spine Group, indicates that this **one** plaintiff "had indeed accepted assignments" from the patient, and that these forms should be considered

---

[5]     J.B.'s lawsuit was filed in state court – her lawful choice of forum -- which has concurrent subject matter jurisdiction over ERISA enforcement actions, and then removed to this Court by defendants. If defendants want to litigate both cases together, then they should stipulate to the voluntary remand of J.B.'s case to the Superior Court where both that case and this one may then be litigated jointly.

in the Court's remand analysis. (Db8).[6]  But defendants did not include these allegations in their removal petition, are bound by the content of that pleading, and cannot add "new jurisdictional facts" at this stage.  Moreover, as discussed *infra*, even if there were assignments, defendants still fail the first prong of *Pascack* because any purported assignments are voided by the application of defendants' anti-assignment clause.

Defendants so-called HCFA[7] claim form "Box 27" assignment argument has been steadfastly rejected by our courts in any event.  Defendants also gloss over what the HCFA-1500 is, and what Box 27 represents. Essentially all health insurance claims are submitted by non-institutional providers, like plaintiffs, to insurers on a standardized form known as the HCFA-1500. *See* EMR Consultant, *CMS 1500 Claim Form* (Aug. 20, 2013) (attached as Ex. "A" to Doc. Iden. Cert. of Eric D. Katz ("Katz Cert.")). The significance and meaning of the 1500 Box 27, when submitted to private healthcare insurers like defendants, is unclear and highly contextual. Since the 1500 was developed by the federal government, some in the industry believe Box 27 only applies to "govt. claims" and checking "yes" indicates the provider will

---

[6]     The claim forms submitted by co-plaintiff Garrick Cox, M.D., LLC are ***not*** included in the ***improper*** Certification of Rachel Wacht at Ex. "C." **In this respect, defendants' argument, wrong as it is, is not even applicable to co-plaintiff Dr. Cox; thus, defendants still fail *Pascack* prong 1 despite their meritless argument.**

[7]     Defendants refer to these forms as HICF forms.  (Db15).

accept assignment of *Medicare and Medicaid* benefits. *See, e.g.*, ANSI, <u>CMS-1500 Claim Form</u>; S.C. Medicaid Dental Program, <u>Completion of the CMS 1500 (08/05) Claim Form</u> (attached as Exs. B and C to Katz Cert.) By contrast, when a claim is submitted to the private health insurer, the meaning of Box 27 varies:

> Check with each carrier to receive clarification on what each of these choices mean to that specific carrier. Some consider a yes to mean that the fee schedule will be accepted in full with no balance billed to the patient, while others consider a yes to mean that the check will go to the provider. Other carriers consider a no to mean that the correspondence will go to the patient and not the provider.

*See* Bradley, <u>The new CMS 1500 claim and how to avoid common stumbling blocks</u>, Dentistry IQ (Feb. 17, 2015) (attached as Ex. D to Katz Cert.) Significantly, the National Uniform Claim Committee "does NOT define what accepting assignment might or might not mean." *See* InstaCode, <u>What Does Accept Assignment Mean?</u> (attached as Ex. E to Katz Cert.) *E.g.*, Mayo Clinic, <u>Understanding Your HCFA 1500 Claim Form</u> (attached as Ex. F to Katz Cert.). In short, because Box 27 is highly circumstantial, defendants' reliance on the HCFA-1500 is insufficient to carry its burden of removing "all doubts" regarding whether plaintiffs have ERISA standing.

Further, defendants neglected to disclose to the Court the decisional law in this District repeatedly rejecting health insurers' attempts to bootstrap the HCFA form in place of actual proof of an executed assignment. *See, e.g.*, *N. Jersey Spinal Med. and Surg., P.A. v. Aetna Ins. Co.*, 2009 WL 3379911, at *3,4 (D.N.J. Oct. 19, 2009) (Judge Martini "find[ing] that [**Box 27**] **fails to establish the existence of a**

**valid assignment** between Plaintiff and any of the Aetna Insureds" and "Aetna has, therefore, failed to meet its burden of demonstrating that Plaintiff received valid assignments…by a preponderance of the evidence) (emphasis added); *N. Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co.*, 2017 WL 659012, at *4 n.7 (D.N.J. Feb. 17, 2017), *R&R adopted*, 2017 WL 1055957 (D.N.J. Mar. 20, 2017) (Judge Falk concluding "Aetna claims that …entry corresponding to **box 27** which, when checked, indicates that the NJBSC has accepted an assignment. **The Court finds this insufficient to confer standing**.") (emphasis added); *N.J. Spinal & Med. Surg. P.A. v. IBEW Local 164*, 2012 WL 1988708, at *2 (D.N.J. May 31, 2012) (Judge Cavanaugh holding "[t]his Court is **not convinced** that…by '**marking box 27** 'acceptance of assignment' on the [HCFA],' Plaintiff has **accepted an assignment**.") (emphasis added).

At bottom, the leading Third Circuit precedents unanimously involve an *actual* assignment; none permits derivative ERISA standing by Box 27. *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 372–73; *CardioNet v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10, 178-79 (3d Cir. 2014); *see Cmty. Med. Ctr. v. Loc. 464A UFCW Wel. Rebt. Plan*, 143 F. App'x 433, 435-36 (3d Cir. 2005). And if checking a box on a HCFA-1500 is all that is required to establish that a provider has ERISA standing, then there would not be **over 100 cases** in this Circuit where the managed healthcare industry, including defendants, have systematically argued that a plaintiff-provider

lacks ERISA standing unless it produces an *actual* assignment – spawning an enormous volume of ERISA standing litigation. All healthcare providers routinely submit claims on this form. Yet, when a dispute arises over claims involving the same form, health insurers routinely argue that providers lack ERISA standing. *E.g.*, *Encompass Office Sol., Inc. v. Conn. Gen. Life Ins.* Co., 2012 WL 3030376, at *2 (N.D. Tex. Jul. 25, 2012) (insurer argued provider lacked standing because it "failed to attach signed assignments of benefits…to the Complaint or allege that these persons executed assignments"); *Metcalf v. Blue Cross Blue Shield of Mi.*, 2013 WL 4012726, at *14 n.11 (D. Or. Aug. 5, 2013) (defendants' sister Blue Cross insurer arguing the Box 27 is **insufficient** for provider to establish standing).[8]

## B.     <u>Defendants Cannot Establish the First Prong of *Pascack*</u>

Defendants open their *Pascack* analysis point with a thunderous misstatement of the law.  Defendants do not have an "absolute right" to remove.  (Db9).  As addressed *supra*, the removal right is limited by Congress and is strictly construed and limited to a very narrow set of cases.  Defendants' arguments go further downhill from there.  Most significantly, the analysis under the first prong of *Pascack* begins and ends with the anti-assignment clause. Defendants readily admit that the plan has

---

[8]     Defendants' reliance on cases interpreting a UB-04 or UB-92 form (Db15-16) is misplaced.  The UB form, utilized only by institutional providers, is not the same as a HCFA-1500, and the meaning of the UB form has not generated the level of debate and uncertainty as the 1500 form has.

an anti-assignment clause and make no bones about their intentions to enforce it. (Db19-20). Decisional law in this District holds the first prong cannot be established where there is an anti-assignment provision, *e.g.*, *Progressive Spine & Ortho. v. Anthem Blue Cross Blue Sh.*, 2017 WL 4011203, at *7-9 (D.N.J. Sept. 11, 2017).[9] Consequently, it is impossible as a matter of fact, law and equity for defendants to establish the first prong. Judge McNulty explained the rise and role of the anti-assignment clause in the current litigation tactics of the managed care industry:

> This is the latest chapter in the quest of out-of-network health care providers to be reimbursed…. The **providers first struggled to be heard in federal court**, finally persuading the Third Circuit that they could, via assignment, assert the rights of their patients. The **Plans in many cases have <u>responded</u> by adopting anti-assignment provisions**. Increasingly, providers have preferred to pursue claims in state court. To avoid ERISA preemption and get around the anti-assignment provision, the provider here has asserted…an independent state-law contract claim on behalf of itself, rather than its patient. The insurer, citing ERISA preemption, has removed the case to federal court and promptly moved to dismiss on, *inter alia*, standing grounds. **The result**, **from the insurer's point of view**, **should be that the <u>provider cannot sue anywhere</u>**…. I will grant [the provider's] motion to remand
>
>            * * *
>
> [Plaintiff-provider] is suing in its individual capacity as a third-party health care provider, not in its derivative capacity as an assignee….[10]

---

[9]    *Accord Specialty Surg. of Middletown v. Aetna*, 2014 WL 2861311, at *2-4 (D.N.J. June 24, 2014) (Linares, J.); *Neuro. Surg. Assocs. v. Aetna Life Ins.*, 2014 WL 2510555, at *2 (D.N.J. June 4, 2014); *N. Jersey Ctr. for Surg. v. Horizon Blue Cross Blue Sh. of N.J.*, 2008 WL 4371754, at *8 n.5 (D.N.J. Sept. 18, 2008); *Somerset Ortho. Assocs. v. Aetna Life Ins.*, 2007 WL 432986, at *1-2 (D.N.J. Feb. 2, 2007) (granting remand where there is an anti-assignment clause).

[10]    A "'provider that has received an assignment…and has [an independent] state law claim…holds <u>two separate claims</u>.'" *CardioNet*, 751 F.3d at 178 (emph. in original); *N. Jersey*, 2017 WL 659012, at *4 ("mere existence of an assignment does

* * *

…[**A**]**n anti-assignment provision renders the purported assignments ineffective**; **it is <u>as if there were no assignments at all</u>**. Moreover, [the provider] explicitly disclaims any attempt to assert the rights of its patient, B.G. **It purports to assert <u>its own rights</u> under theories of contract and** *quasi*-**contract**…. For this reason alone, I am compelled to find that the court lacks subject matter jurisdiction….

*Prog. Spine*, 2017 WL 4011203, at *1,5,8-9 (emph. added).  So too here. Because

of the anti-assignment clause, defendants cannot satisfy the Third Circuit standard:

**The <u>possibility</u> – or even likelihood – that ERISA's pre-emption provision may pre-empt the [plaintiff] Hospital's state law claims is <u>not</u> a sufficient** basis for removal.

* * *

…[**T**]**he <u>absence</u> of an assignment is <u>dispositive</u> of the complete pre-emption question**.

*Pascack*, 388 F.3d at 398, 404 (emph. added).

Defendants, however, assert that Judge McNulty's analysis is "flawed" and should be disregarded.  (Db22).  Instead, defendants rely on a trio of cases to advance their contention that prong 1 is satisfied and "standing" established, even though the purported assignment is voided *ab initio* by the anti-assignment clause.  Only one of those cases is from this District:  *Cohen v. Horizon Blue Cross Blue Shield of N.J.*, 2017 WL 685101 (D.N.J. Feb. 21, 2017).   However, *Cohen* is factually distinguishable and legally irrelevant. Unlike here, in *Cohen* the plaintiff-provider pled that he had an assignment, and the defendant-insurer did not assert an anti-

---

not convert [the provider's] state law claim…into a claim to recover benefits under…an ERISA plan) (collecting cases).

assignment or "contest" ERISA standing. *Id*. at *4. Defendants expectedly latch onto Footnote 5 of that opinion where the court "assumes" it has jurisdiction.  But that footnote cannot mean what defendants interprets it to state, because the Third Circuit has made crystal clear that a court cannot "assume" that it has subject-matter jurisdiction. *Pascack*, 388 F.3d at 398, 404 ("possibility" of standing insufficient); *Cmty. Med. Ctr.*, 143 F. App'x at 435-36 (**reversible error** where district court assumed the provider had standing*).  See Verde-Rodriguez v. Atty. Gen. U.S.*, 734 F.3d 198, 204 n.5 (3d Cir. 2013) (court cannot assume it has jurisdiction, it "must accurately discern [its] own subject matter jurisdiction").[11]

Finally, defendants' reliance on *Lister v. Stark*, 890 F.2d 941, 946 (7th Cir. 1989) is misplaced.  There, the court concluded *in a non-healthcare case* that "since ERISA does not allow oral modifications of pension plan provisions" the unavailability of a remedy to the plaintiff has no bearing on preemption.  But in a healthcare case such as this one, the Third Circuit has made crystal clear that unless

---

[11]    Defendants' reliance on two non-Third Circuit cases -- *Kennedy v. Conn. Gen. Life Ins.*, 924 F.2d 698 (7th Cir. 1991) and *City of Hope Nat. Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223 (1sr Cir. 1998) – is equally baseless.  In *Kennedy*, unlike here, there was no ironclad anti-assignment clause and "the *possibility* of direct payment is enough to establish subject-matter jurisdiction." 924 F.2d at 701 (emphasis added).  In the case at bar, there is **_no_** "possibility" of standing, as defendants have made crystal clear their intention of enforcing their anti-assignment clause.  And *City of Hope* is simply not the law in this District.  See *Prog. Spine*, 2017 WL 4011203, at *9 ("[A]n anti-assignment provision renders the purported assignments ineffective; it is **as if there were no assignments at all**.") (emphasis added).

providers can sue in their own right, "they would have to sue the [patient] [or] would [be] discourage[ed] from helping [patients] who were unable to pay them 'up-front.'" *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 374 (citation omitted). This significant policy-based conclusion mandates that providers **must** have a remedy to seek payment of their claims, and defendants' anti-assignment clause eliminates "standing" to pursue that right in federal court, as Judge McNulty aptly held.[12]

In sum, defendants have <u>not</u> carried their "heavy burden" to eliminate "all doubts" regarding whether there is removal jurisdiction. *Manning v. Merrill Lynch*, 772 F.3d 158, 162 (3d Cir. 2014); *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009).

**C.** <u>**Defendants Also Cannot Establish the Second Prong of *Pascack***</u>

Even if *arguendo* there was standing, remand should be granted because defendants also cannot eliminate "all doubts" regarding the second prong of *Pascack*. The Complaint sets forth that the "crux" of this dispute, *Pascack*, 388 F.3d at 402, is predicated on defendants' misrepresentations and conduct during the pre-approval process, (D.E. 1-1, at ¶¶ 11-17 & 24-48). Under the *Memorial Hospital* rule, such claims are not preempted by ERISA. (D.E. 7-1 at 21-28). Trying to

---

[12]  Defendants argue that plaintiffs did not address *Pascack* "Prong 1, Part 2" in their opening brief. (Db19). Plaintiffs did not, and for good reason; this sub-part test is not part of *Pascack*. It arises from the Second Circuit; *see, e.g., McCulloch Orthopaedic Surg. Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145-46 (2d Cir. 2017). Regardless, as Judge McNulty held in *Progressive*, because the anti-assignment clause eviscerates any assignment, there is no "colorable claim" under Prong 1, Part 2. 2017 WL 4011203 at *8-9.

sidestep this foundational limit on ERISA preemption, defendants contend that the rule does not apply here because this "case involves a dispute over whether coverage" exists for J.B.'s back surgery.  (Db25).  Not only is this counter-factual argument impermissible as a matter of law, *see* footnote 4, *supra*, it is also flatly incorrect.   Clearly coverage ***does*** exist for J.B.'s surgery because every other provider that rendered services during the surgery and for post-surgical care, ***was paid***, and defendants specifically pre-authorized plaintiffs to render several of the same surgical services that plaintiffs subsequently billed after the surgery was performed.  (D.E. 1-1 at ¶17).

**Defendants' own business records unequivocally belie their false facts.** *See* Defendants' Explanations of Benefits, attached as Ex. G to Katz Cert. (Indicating "Amount[s] Covered" and paid to J.B.'s other providers totaling $39,730.20, $415.36, and $8,372.97).[13] And compare defendants' business records documenting pre-authorization of plaintiff North Jersey Spine Group's billing codes:

---

[13]     These payments were for all providers both in defendants' network and out of defendants' network. Among the providers that were paid for the subject surgery and post-surgical care were: the hospital, hospital operating room, hospital accommodations, medical/surgical supplier, anesthesia provider, surgical monitoring provider, hospital recovery room, pharmacy, radiology, hematology, and post-surgical physical therapy and rehabilitation.  **In short, every provider involved in rendering the subject services to J.B., from soup to nuts, was paid – other than the surgeons themselves.**

"63047 . . . 22851, 63047, 20930 . . . ."[14] with plaintiff's claim form submitted to defendants for payment following the surgery, and containing the **same** billing codes: "22851, 22851, . . . 20930, . . . 63047, . . . ."[15]

In short, this case is ***precisely*** the type of partial coverage case where the *Memorial Hospital* rule applies – the classic situation where a provider reasonably relies on a misrepresentation by the insurer to its detriment.

Straining vigorously to distinguish 30 years of precedents from every Circuit in the nation, but citing no authority of their own, defendants argue that the *Memorial Hospital* rule has been interpreted narrowly, and should not apply to partial coverage cases. But managed care's attempts to gut the *Memorial Hospital* rule have already been rejected by courts.  In *Access Mediquip v. UnitedHealthcare Ins.*, 662 F.3d 376, 380-81 (5th Cir. 2011), the Fifth Circuit rejected any distinction between the existence and extent of coverage claims (*i.e.*, defendants' argument here):

> [The insurer] United asserts that we have "consistently used" the "'existence' of patient coverage versus 'extent' of patient coverage analysis" under which claims based on "extent" misrepresentations are preempted.… [**W**]**e are not aware of, any case in which we held that ERISA preempts a**…**provider's state law misrepresentation claims premised on allegations that it was misled**…**regarding the extent of coverage**…. On the contrary, the claim **we held was not preempted in** *Transitional* **was premised on an alleged misrepresentation regarding the extent of [the patient's] coverage**…. It is difficult to see why preemption should depend on whether a provider alleges

---

[14]    *See* Defendants' "Clinical Notes for Case # 98689C6H," attached as Ex. H to Katz Cert.

[15]    *See* Plaintiff's Claim Forms, attached as Ex. C to Wacht Cert. (D.E. 11-1).

that it was misled by explicit promises of future payment or by statements about coverage that conveyed a false impression of future payment…. The "existence-of-coverage" versus "extent-of-coverage" distinction applied by the district court is thus at odds with both the reasoning and the result of *Transitional*. **Other circuits that have adopted the approach we set forth in *Memorial* and *Transitional* have also rejected an existence-versus-extent approach**.

*Id*. at 383-85 (emph. added) (internal citations omitted). And like the Fifth Circuit, other courts have rejected defendants' narrow reading of *Memorial Hospital* as a "**distinction without a difference**." *SLF No. 1 v. United Healthcare Servs.*, 2014 WL 518222, at *1 (M.D. Tenn. Feb. 7, 2014).[16] So too here.

Moreover, defendants' reliance on *Montefiore* to distinguish the instant facts from those in the remanded *McCulloch* case is unpersuasive. (Db29-30). As the Second Circuit succinctly found in *McCulloch*, the insurer flunked prong 2 because the provider's "phone call with Aetna was not in furtherance of an ERISA plan. **McCulloch was not a valid assignee of the plan** . . . ." 857 F.3d at 150-51 (emphasis added). Same here, as defendants have made clear that their anti-assignment clause expressly prohibits any assignments *ab initi*o. In sum, the *Memorial Hospital* rule applies in the same manner regardless of whether the

---

[16]     *E.g.*, *McCulloch Orthopaedic Surg. Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 144 (2d Cir. 2017); *Trans'l Hosp. v. Blue Cross & Blue Sh. of Tex.*, 164 F.3d 952, 953-55 (5th Cir. 1999); *Nationwide DME v. Cigna Health & Life Ins.*, 136 F. Supp. 3d 1079, 1082–87 (D. Ariz. 2015).

misrepresentation involves the extent or existence of coverage. Defendants have **not** satisfied their "heavy burden" of removing "all doubts" regarding the second prong.

Because defendants cannot establish either prong of *Pascack*, let alone both prongs, remand is necessary.[17]

## D. <u>Defendants' "Precedent" Argument is Unavailing</u>

Defendants' final plea to escape remand, arguing that remanding here would be "inconsistent" with precedent, is perplexing. (Db31-35). Obviously, plaintiffs are not contending that every case should be remanded, but for the reasons addressed herein and in the opening brief, remand is appropriate in *this* case.   To recap: defendants cannot sustain their "heavy burden" to establish the existence of a valid, written assignment and even if they could, defendants' anti-assignment clause eviscerates any standing.   Thus, defendants fail *Pascack* prong 1. Further, because

---

[17]     Also, defendants' incorrectly request that the Court reject *Pascack* because plaintiffs are non-participating providers. *Pascack* simply requires "an independent duty," not an independent **contractual** duty.  *See Horizon Blue Cross Blue Shield of N.J. v. E. Brunswick Surgery Ctr.*, 623 F. Supp. 2d 568, 574 (D.N.J. 2009) (relied on by defendants) ("Defendant's contention that [*N. Jersey Ctr. for Surgery, P.A. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 2008 WL 4371754 (D.N.J. Sept. 18, 2008)]'s essential holding is limited to those claims arising under the terms of an independent contract is too narrow a construction and disregards the *Davila* Court's finding that **any independent legal duty may provide a proper basis for jurisdiction in state court**") (emphasis added); *Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.*, 2007 WL 2416428, at *6 (D.N.J. Aug. 20, 2007) (refusing to limit "independent duty" requirement to claims arising from a contract, i.e., an in-network provider).

the *Memorial Hospital* rule applies to plaintiffs' claims, defendants also fail prong 2.[18]

## CONCLUSION

Plaintiffs' motion to remand for lack of jurisdiction should be granted.

Respectfully submitted,

**MAZIE SLATER KATZ & FREEMAN, LLC**

BY:  _s/ Eric D. Katz_____

Dated:  April 9, 2018              ERIC D. KATZ

---

[18]     Defendants, for example, believe *N. Jersey Brain & Spine v. Conn. Gen. Life Ins. Co.* is "applicable precedent." But like the other cases defendants cite, the facts there are nothing like the instant matter. In *N. Jersey Brain & Spine*, 2011 WL 4737067, at *2,5,8, *R&R adopted*, 2011 WL 4737063 (D.N.J. 2011) (Wigenton, J.), plaintiff submitted to the court the actual written assignment and thus there was no dispute the provider had derivative ERISA standing; further, the anti-assignment clause was not raised, and that court concluded the *Memorial Hospital* rule only applied to ERISA § 514(a). A more recent 2016 decision by Judge Wigenton clarifies that, as recognized by Judges Chesler and Salas (and appellate precedent), the rule applies equally to ERISA § 502. *Garrick Cox M.D. v. Cigna*, 2016 WL 6877778 (D.N.J. Oct. 28, 2016), *R&R adopted*, 2016 WL 6877740 (D.N.J. Nov. 21, 2016); *Peterson v. Cigna Ins. Co.*, 2014 WL 4054120 (D.N.J. Aug. 15, 2014); *Elite Ortho. and Sports Med., P.A. v. Cigna Healthcare*, 2017 WL 1905266 (D.N.J. Apr. 20, 2017), *R&R adopted*, 2017 WL 1902162 (D.N.J. May 8, 2017); *accord McCulloch*, 857 F.3d at 148-51 (holding *Mem'l Hosp.* rule applies to § 502); *Conn. St. Dental Ass'n v. Anthem Health Plans*, 591 F.3d 1337, 1346–47 n.7 (11th Cir. 2009) (same).